## LEHMAN CO. *v.* UNITED STATES (No. 1354).[1]

MEN'S COTTON GLOVES.

The provision of paragraph 328, tariff act of 1909, relating to knitted or woven gloves, is not limited in its application to gloves that are knitted, fashioned, and shaped wholly by a machine. Spielmann & Co. *v.* United States (3 Ct. Cust. Appls., 368; T. D. 32962) is controlling on the facts in this case.

United States Court of Customs Appeals, November 27, 1914.

APPEAL from Board of United States General Appraisers, Abstract 34530 (T. D. 34090).

[Affirmed.]

*Jules Chopak, jr.* (*William L. Wemple* of counsel), for appellant.
*Bert Hanson,* Assistant Attorney General (*Charles E. McNabb,* assistant attorney, of counsel; *Martin T. Baldwin,* special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The merchandise the subject of this appeal consists of men's cotton gloves, made of knitted cotton goods, shaped or cut, and sewn together. They were assessed for duty under the provisions of paragraph 328 of the tariff act of 1909, which, in so far as pertinent, reads:

328. Stockings, hose and half-hose, selvedged, fashioned, narrowed, or shaped wholly or in part by knitting machines or frames, or knit by hand, including such as are commercially known as seamless stockings, hose, and half-hose, * * *. Men's and boys' cotton gloves, knitted or woven, valued at not more than six dollars per dozen pairs, fifty cents per dozen pairs and forty per centum ad valorem; valued at more than six dollars per dozen pairs, fifty per centum ad valorem.

The appellant, who was the importer and protestant, claims them properly dutiable either under the provisions of paragraph 324 of said act as wearing apparel of every description composed of cotton or other vegetable fiber, or under the provisions of paragraph 332 as articles made from cotton cloth. The issues presented in this case and the merchandise the subject of consideration are precisely the same as in the case of Spielmann & Co. *v.* United States (3 Ct. Cust. Appls., 368; T. D. 32962). The testimony adduced at this trial and constituting this record does not undertake to establish commercial description. It seems to have been directed principally to the point of endeavoring to establish as a basis for judicial interpretation the absence from trade and commerce of gloves for men woven from cotton or other vegetable fiber.

The contention of the appellant here is, as it was in the case stated, that the provisions of paragraph 328 apply only to those knitted gloves the manufacture of which is completed upon knitting machines; that is to say, which are not only knitted but are fashioned and shaped wholly by a knitting machine or frame. In response to

---

the contention that there are no such commercial articles as men's woven gloves, nor a glove made of woven cotton cloth or other vegetable fiber, this record shows upon the testimony of the importer's witnesses the presence in trade and commerce of considerable quantities of such articles. They not only exist in the trade and commerce of this country, but have been imported from abroad. They are used by housemaids, by truckmen, and by gate tenders of railroads, as appears by this record.

In Spielmann & Co. *v.* United States, *supra,* this court said:

The phrase "cotton gloves, knitted or woven," is a broad and comprehensive term. All cotton gloves must be either knitted or woven, and it would seem that the intent of Congress is manifest to include within this one provision all cotton gloves. Such a thing as a woven cotton glove shaped by the process of weaving to fit the hand is unknown, and it is hardly conceivable that the term "knitted" is to be given a more limited signification when applied to gloves falling within its terms than the word "woven" used disjunctively in connection therewith.

An examination of paragraph 328 likewise discloses that when Congress was therein speaking of stockings made upon a knitting machine and wished to include only those which were fashioned and shaped wholly by a knitting machine it used language for that purpose precisely expressive thereof, speaking of them as "stockings, hose, and half-hose, selvedged, fashioned, narrowed, or shaped wholly or in part by knitting machines or frames." In the succeeding part of the paragraph, the part here in question, Congress did not use this limiting language, though speaking of knitted articles. The natural and forceful inference is that Congress did not here intend to include only those knitted gloves which were shaped and fashioned by knitting machines. The use of the word "woven" in connection with the word "knitted" gains additional force by this verbal relationship. Its use with the word "knitted," without the limiting language stated, goes far to evidence that Congress contemplated in this provision all those knitted gloves which could be made like woven gloves, and, therefore, classified the two together and surrounded each word with the same limiting language and no other. The contrary view renders idle and surplusage that language in the earlier provision. Moreover, as is pointed out in the Spielmann case, *supra,* there was a long continued and uniform and general customs practice, departmental and judicial, which gave to the words "knitted" and "knitting" a meaning which includes such merchandise as this as well as that completely fashioned and shaped by knitting machines. We find nothing in this record which would cause us to depart from the decision in the Spielmann case; on the contrary, the testimony herein and the reargument of the points involved confirm us in the correctness of the views expressed in that decision.

*Affirmed.*